## LEE WALKER v. STATE.

No. A-9184.   July 30, 1937.
(70 Pac. 2d 1099.)

Ratliff & Clark and Newman & Phillips, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error was by information jointly charged with L. C. Privett with the larceny of five fresnoes, of the value of $137.50; was tried separately, convicted, motion for new trial filed, considered, overruled, and the record properly saved.   The plaintiff in error, who will hereinafter be referred to as the defendant, was sentenced to serve three years in the state penitentiary.

James R. Banner, testifying for the state, stated:

"I live near Reagan, Tishomingo is my post office; I was working for the United States government in the early part of 1935, near Reagan, at the fish hatchery, and had control of several fresnoes; along in March, 1935, I was not using the fresnoes and stacked them near the road down where I had been working, and in September, 1935, I missed five of them and located them at Fittstown, near the barn of the defendant Lee Walker. When I stacked the fresnoes in March I stacked them near my garage; they were stacked there March 22, 1935, when the FERA quit operating; during the time the FERA was furnishing the labor we had thirty fresnoes; the garage is about 150 yards from the foreman's residence, and about 150 feet from the road; these five fresnoes I found in the possession of Lee Walker, at Fittstown, the defendant stated to me he had bought. The fresnoes were delivered to me but are held by the sheriff until this case is disposed of."

Coot Coker, testifying for the state, stated he worked at the fish hatchery in 1935, during the month of March; that the latter part of March, 1935, the FERA quit working:

"I was foreman of the gang, and as foreman used a number of fresnoes; when we quit work I stacked them at the new garage on the property; I believe I stacked thirty; some time in September I went with Mr. Raper to Fittstown, and at the defendant Walker's place we found some of the fresnoes; Mr. Walker was not at home when we first went to his place; he came in shortly afterwards and stated he bought these fresnoes. These fresnoes are branded 'Western.'"

W. W. Raper, a deputy sheriff, stated he had received information that some fresnoes were at the Walker place and called Mr. Banner and Mr. Coker, and they went out there and found them; he asked Mr. Walker if they

were his, and he said they were, that he had bought them; he did not know the fellows from whom he bought them; he had never seen them until the day he bought the fresnoes and had not seen them since.

Some other testimony was admitted as to other fresnoes the defendant had been using. The testimony shows that the fresnoes had been stacked by the parties who were using them in March and were not missed until the September following.

The defendant in his testimony shows he was a contractor in what is known as Fittstown in the oil field, and that he had been using teams and fresnoes. The defendant states one afternoon along in March or the 1st of April, two men came to where he was at the camp corral, and told him they wanted to sell him some fresnoes and described them to him, and he told them if they were as good as they described them he would buy them; they left and stated they would return about 3 or 4 in the afternoon, but they did not return until about 8 o'-clock. The defendant says he bought them from these parties, paying $50, that he wanted to give them a check, but they did not want to take the check and he went to Barnes' store and got the money; that he did not know their names and that he did not take a receipt for the money for the fresnoes. The defendant had been using the fresnoes first and last from March until the 1st of September, and when not using them he would leave them near his house and garage on the public thoroughfare where any one passing could see them.

There is no evidence tending to show that the defendant made any effort to conceal the fresnoes, or that he ever denied having them; he told every one who asked about them that he bought them from two men whose

names he did not know, that he did not know where they lived, but they said they came from Coalgate. Defendant said that after he was charged with the crime he made an effort to locate them in Coalgate, but failed to do so.

Several witnesses were called by the defendant who testified to seeing the men the day they came to sell the fresnoes to the defendant. A witness by the name of E. E. Sutton, who was present when the fresnoes were unloaded at the defendant's place, stated he heard them talking to Mr. Walker; that Mr. Walker wanted to give them a check and they did not want to take it, and Mr. Walker went to town and got the money; this transaction was some time in March, he would not be sure as to the date. After Mr. Walker purchased them, they used them and Mr. Walker had the control of them up to the time the officers came and got them.

There was no effort on the part of Mr. Walker to conceal the fresnoes; they were setting around the camp; "when I went to work for Mr. Walker he had two or three old fresnoes."

The defendant then offered several witnesses who testified as to his previous good character in the community in which he lived.

Ten errors have been assigned by the defendant as grounds for reversal. The assignments necessary to be considered are:

"1. That said verdict is contrary to law.

"2. That said verdict is contrary to and against the evidence produced by the state herein.

"3. That said verdict is contrary to the law and the evidence."

"7. The court erred in refusing to sustain plaintiff's motion for a directed verdict, and error in refusing to sustain plaintiff's demurrer to the evidence at the conclusion of state's testimony in chief."

The only question for this court to determine is the question of the testimony. Is the testimony sufficient to sustain a conviction of grand larceny?

Section 2253, O. S. 1931 (21 Okla. St. Ann. § 1701), defines larceny as follows:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

Section 2255, O. S. 1931 (21 Okla. St. Ann. § 1703), reads as follows:

"Larceny is divided into two degrees; the first of which is termed grand larceny, the second petit larceny."

Section 2256, O. S. 1931 (21 Okla. St. Ann. § 1704), defines "grand larceny":

"Grand larceny is larceny committed in either of the following cases: 1. When the property taken is of value exceeding $20. 2. When such property, although not of value exceeding $20 in value, is taken from the person of another."

The evidence in this case on the part of the state shows that five fresnoes were taken by some one from where they were stored, and that they were found at the home of the defendant. It is not denied by the defendant that these fresnoes were the fresnoes missed by Mr. Banner, the witness who had possession of them, nor is there any question of ownership raised by the defendant.

The defense made by the defendant is that he did not steal the fresnoes found in his possession, but in the regular course of business he bought them from some unknown parties who came to his place where he was working; that the parties described the fresnoes and told him they would be back about 3 or 4 in the afternoon, but they did not return until 8 or 9 in the evening. Two or three witnesses saw them come to the defendant's place in the afternoon and inquire for the defendant. The defendant was a contractor engaged in the oil field, using teams and fresnoes. Witnesses stated the parties asked for Mr. Walker and they told them he was up at the camp corral and the parties left.

The defendant explained that they came to where he was working and proposed to sell him the fresnoes, and after some negotiations he told them if they were as good as they said they were he would buy them, and they left and returned about 8 or 9 o'clock in the evening; that he made an examination of the fresnoes brought to his place by the parties and bought them. Mr. Sutton, one of his employers, was present; the fresnoes were unloaded and as the parties would not take a check the defendant went up to Mr. Barnes' store and got some money and paid them, without taking a receipt for the money, a bill of sale for the fresnoes, or any one seeing him pay them the money.

The charge in this case is larceny of the fresnoes, and not the receiving of them knowing them to have been stolen.

According to the testimony, the fresnoes had been in the possession of the defendant for several months before Mr. Banner missed them. The defendant had used them in his work where a number of men were employed, and

when the work ceased they were stacked in view of all comers and goers, no effort being made to conceal the fresnoes alleged to have been stolen by the defendant. The state introduced some testimony of a witness by the name of Jackson, that some time in March or April, several months prior to the time the defendant was arrested, while returning from Sulphur with the defendant, the defendant told him he wanted to pick up a fresno and take it home with him, and the next day the witness Jackson began using the fresno. After the defendant was arrested, charged with the larceny of the five fresnoes, the witness Jackson states he was shown the fresnoes which were in the possession of the officers and that neither of the five fresnoes was the fresno that the defendant had picked up as they returned from Sulphur.

The courts have repeatedly held that the possession of recently stolen property is a circumstance to be considered with other evidence in the trial of a larceny case, but such possession alone is not sufficient proof of the crime to warrant a conviction where a reasonable explanation of the same is made of the possession of the property, and the testimony tends to support the explanation.

In this case the defendant is entitled to the presumption of innocence, and it follows him throughout the trial until overcome by competent testimony. His neighbors who had known him for many years testify to his good character, and the witness Sutton who was present at the time the defendant claims he bought the fresnoes, and saw them unloaded, states that the two men who brought them to the defendant's home in discussing the question of pay declined to accept a check, and the defendant went to town and got the money for the parties. The fact that defendant had possession of the property and had had for a number of months is a suspicious cir-

cumstance tending to show the defendant might have stolen the same, but is this suspicious circumstance suffi‑ cient to overcome the positive testimony of the defendant and other witnesses who testify to the parties delivering the fresnoes, the presumption of innocence of the defend‑ ant, and the evidence of a number of his neighbors who had known him in the past testifying as to his good char‑ acter? We do not believe that it is.

No act of the defendant is shown indicating that he in any way whatever sought to conceal the fresnoes, but, on the contrary, that he used them where there were a number of parties at work. and kept them at his camp at the roadside where they might be seen by any one who came along the road or visited his camp.

The propositions urged in the brief of the defendant are based upon the contention that the court erred in overruling defendant's motion for a directed verdict, and erred in refusing to sustain demurrer to the evidence, and refusing to advise the jury to bring in a verdict of not guilty, and that the verdict and judgment are contrary to the evidence.

We think the court should have sustained the de‑ murrer to the evidence, and should have discharged the defendant at the close of the state's testimony. The only thing established is the fact that the defendant was in possession of the fresnoes; that he used the fresnoes pub‑ licly, and kept them at his home where anyone might see them, making no apparent effort at any time to conceal the same or mislead any one as to his claim of owner‑ ship. Shaw v. State, 13 Okla. Cr. 511, 165 Pac. 617; Vans‑ dale v. State, 45 Okla. Cr. 123, 286 Pac. 170; Stanley v. State, 61 Okla. Cr. 382, 69 Pac. (2d) 398.

The proof offered by the state fails to disclose conduct on the part of the defendant which indicates he had stolen the fresnoes. It would be unreasonable to believe that a man would steal the fresnoes and use them in his work and leave them where any one passing or coming to the place could see them, if he had stolen the fresnoes. In our judgment, the court should have sustained the demurrer and motion to advise the jury to return a verdict of not guilty. The verdict and judgment are contrary to the evidence. The judgment is reversed and the case remanded, with directions to grant a new trial.

DOYLE, J., concurs. BAREFOOT. J., absent; not participating.